UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
                                                              :
CRCM INSTITUTIONAL MASTER FUND      :
(BVI) LTD. and CRCM SPAC            :
OPPORTUNITY FUND LP,                :       No. _____
                                                              :
                    *Plaintiff*,    :
                                                              :       **COMPLAINT**
                                                              :
          -against-                 :
                                                              :
GETTY IMAGES HOLDINGS, INC.,        :
                                                              :
                    *Defendant*.    :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiffs, CRCM Institutional Master Fund (BVI) Ltd. ("CRCM Master Fund" or "Plaintiff") and CRCM SPAC Opportunity Fund LP ("CRCM SPAC Fund" or "Plaintiff," and together with CRCM Master Fund, the "CRCM Funds" or "Plaintiffs"), file this action against Defendant Getty Images Holdings, Inc. ("Getty Images") for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of the Securities Act of 1933 (the "Securities Act") §§ 5(b)(2) and 12(a)(2), and breach of the Securities Exchange Act of 1934 (the "Exchange Act") § 10(b), and allege as follows:

## INTRODUCTION

1.    The CRCM Funds bring this action to remedy numerous breaches concerning public warrants issued by Getty Images and misrepresentations made about those warrants. These breaches and misrepresentations damaged the CRCM Funds (and similarly-situated public warrant

holders) by tens of millions of dollars while also transferring that lost value to Getty Images and its insiders.[1]

2.    Getty Images is a public company that resulted from a business combination with CC Neuberger Principal Holdings II, a special purpose acquisition company ("CCNB SPAC"), that was consummated on July 22, 2022 (the "Business Combination").  In connection with the Business Combination, Getty Images issued public warrants (the "Warrants") exercisable for its Class A common stock (the "Warrant Shares") in exchange for all of the issued and outstanding public warrants of CCNB SPAC.  By their terms, the Warrants would become exercisable on August 22, 2022 (thirty days following the Business Combination), provided the Warrant Shares were registered under the Securities Act on an effective registration statement containing a current prospectus.

3.    All conditions were met.  Getty Images registered the Warrants and the Warrant Shares under the Securities Act on a registration statement on Form S-4 (as amended, the "Getty S-4") initially filed with the Securities and Exchange Commission (the "SEC") on January 18, 2022.  The Getty S-4 was amended over multiple iterations, reviewed by the staff of the SEC's Division of Corporation Finance (the "Staff"), and declared effective by the SEC on June 30, 2022.  A final prospectus dated June 30, 2022, covering the offer and sale of the Warrants and the Warrant Shares registered on the Getty S-4, was filed by Getty Images with the SEC on July 1, 2022.  The Business Combination was consummated on July 22, 2022.  Thus, by their terms, the Warrants became exercisable for Warrant Shares on August 22, 2022, the thirtieth day following the Business Combination.

---

[1] Getty Images' misconduct is already the subject of at least one other lawsuit by a public warrant holder.  That lawsuit, *Alta Partners, LLC v. Getty Images Holdings, Inc.*, Case No. 1:22-cv-08916 (S.D.N.Y.), arises out of substantially similar facts and circumstances as those alleged in this action.

4.     The SEC declared the Getty S-4 effective through a Notice of Effectiveness issued on July 1, 2022.

5.     In addition, the fact of the Warrant Shares' registration on the Getty S-4 is evidenced, *inter alia*, by the following:

a.     Getty Images paid a fee to register the Warrant Shares on the Getty S-4;

b.     Getty Images filed its legal counsel's opinion letter concerning the securities being registered on the Getty S-4.  It stated, without qualification, that the Warrants "will be a valid and binding obligation" of Getty Images when issued upon consummation of the Business Combination and that the Warrant Shares "will be duly authorized, validly issued, fully paid and non-assessable" when the Warrants are exercised and the strike price paid by Warrant holders; and

c.     The registration of the Warrant Shares on the Getty S-4 was required by SEC Compliance & Disclosure Interpretation ("C&DI") 139.01, which states that when warrants exercisable within one year are being registered under the Securities Act, the underlying securities must be registered at the same time.

6.     Getty Images' actions after the SEC declared the Getty S-4 effective further confirm that the Warrant Shares had been registered on the Getty S-4.  Those actions, include:

a.     Getty Images' inclusion of the Warrants and its Class A common stock (of which the Warrant Shares were a part) on its Form 8-A registration statement under the Exchange Act, filed with the SEC on July 22, 2022, which the New York Stock Exchange relied upon when approving the Warrants and the Class A common stock for listing on the same day;

b.      The fee table to Getty Images' resale registration statement on Form S-1 (as amended, the "Getty S-1"), initially filed with the SEC on August 9, 2022 following consummation of the Business Combination, expressly discloses that the Warrant Shares were to be transferred from the already-effective Getty S-4 upon the SEC's declaration of effectiveness of the Getty S-1 (which ultimately occurred on September 15, 2022), and that the registration fee for the Warrant Shares had already been paid in connection the registration of the Warrant Shares on the Getty S-4;

c.      Getty Images' expressly excluded from registration on the Getty S-1 any Warrant Shares that had been offered and sold by it to Warrant holders under the Getty S-4 in advance of the Getty S-1 being declared effective; and

d.      The Getty S-1 purported to be a post-effective amendment to the Getty S-4, meaning that until the Getty S-1 became effective, the Getty S-4 was the operative registration for the Warrants and Warrant Shares.

7.      Nevertheless, in the aftermath of the Business Combination, Getty Images took the confounding (and incorrect) position that the Getty S-4 had not registered the Warrant Shares.  As a result, Getty Images would not permit the CRCM Funds (or other Warrant holders) to exercise their Warrants until the Warrant Shares were registered on an effective Form S-1.

8.      These actions breached, among other things, Getty Images' contractual obligations and its duty of good faith and fair dealing to the CRCM Funds.  The consequences of Getty Images' misconduct were massive.

9.      Soon after its stock began publicly trading, Getty Images' share price rocketed upward, which then triggered an earn-out that unlocked enormous incentive distributions to Getty

Images insiders, including the former sponsor of CCNB.[2]  The skyrocketing share price also allowed Getty insiders to exercise unregistered private placement warrants at highly favorable ratios.

10.     At their peak, these incentives were worth billions of dollars, and, despite a subsequent decline in the stock price, they remain worth hundreds of millions of dollars today.

11.     While Getty Images' stock price soared, the CRCM Funds and certain other Warrant holders were forced by Getty Images to sit on the sidelines (which prevented them from realizing profits on their Warrants) based on the false position that the Getty S-4 did not register the Warrant Shares into which the Warrants could be exercised.

12.     Rather, Getty Images contended the Warrants were not exercisable until September 16, 2022, the day after the Getty S-1 became effective.  By that time, however, Getty Images' common stock price had dropped below the strike price of the Warrants.  The stock price never recovered.

13.     On September 19, 2022, Getty Images notified Warrant holders that it would exercise its right to redeem all outstanding Warrants for $0.01 each.  The warrants ceased trading on October 19, 2022, and were delisted on October 31, 2022.

14.     The CRCM Funds bring this action to seek damages, including for the loss incurred on their position as well as the lost profits they would have obtained if Getty Images had permitted them, as required by the terms of the Warrants, to execute their trading plan to realize the maximum value of their Warrants by exercising those Warrants on August 22, 2022, and selling the Warrant Shares immediately thereafter.  Instead, by preventing CRCM Funds from exercising their

---

[2] This Complaint uses the term "Getty Images insiders" to refer to the SPAC sponsor and Getty Images' directors, officers, and 10% shareholders.

Warrants as of August 22, 2022 (in contravention of the Warrants' terms), Getty Images caused CRCM Funds to sell their warrants at a loss and thereby lose the profits available to them.

15.     Alternatively, if Getty Images was correct that the Warrants were not exercisable because the Warrant Shares had not been registered on the Getty S-4 for offer and sale on a delayed and continuous basis, then Getty Images is liable to the CRCM Funds for violating Exchange Act § 10(b) by failing to disclose in the Getty S-4 that the Warrants would not become exercisable until a subsequent resale registration statement covering the Warrant Shares was filed and declared effective by the SEC, and the risk associated therewith.

16.     Further, if the Warrants were not exercisable because of Getty Images' failure to maintain a current prospectus relating to the Getty S-4 (as Getty Images has contended in related litigation), then Getty Images is liable to CRCM Funds for (a) breach of contract, having failed to exercise commercially reasonable efforts to keep the prospectus current, and (b) violating Securities Act §§ 5(b)(2) and 12(a)(2), having failed to maintain a current prospectus for the duration of the delayed and/or continuous offering of securities registered on the Getty S-4.

## JURISDICTION AND VENUE

17.     Subject matter jurisdiction exists under 28 U.S.C. § 1331 because this dispute arises under the securities laws of the United States.  Specifically, the dispute necessarily depends on whether the Warrants and Warrant Shares were registered under the Securities Act on the Getty S-4 and whether Getty Image met its disclosure obligations under the Exchange Act.

18.     This Court has personal jurisdiction under 28 U.S.C. § 1391 under Section 9.3 of the Warrant Agreement between CCNB SPAC and Continental Stock Transfer & Trust Company, dated August 4, 2020, subsequently assumed by Getty Images (the "Warrant Agreement"), which governs the Warrants.  Under that Warrant Agreement, Getty Images "irrevocably submit[ted]" to

the jurisdiction of "the courts of the State of New York or the United States District Court for the Southern District of New York" and gave those courts exclusive jurisdiction over "any action, proceeding or claim arising out of, or otherwise based on, this Agreement."  Getty Images further "waive[ed] any objection to such exclusive jurisdiction and that such courts represent an inconvenient forum."

## THE PARTIES

19.     Plaintiff CRCM Master Fund is an exempt BVI company incorporated in the British Virgin Islands with its principal place of business in Tortola, British Virgin Islands.

20.     Plaintiff CRCM SPAC Fund is a limited partnership incorporated in Cayman Islands with its principal place of business in George Town, Grand Cayman.

21.     Defendant Getty Images is the resulting entity of the aforementioned Business Combination, which involved, *inter alia*, CCNB SPAC, Vector Holding, LLC, and Griffey Global Holdings, Inc. (collectively, "Getty Images").  Getty Images, a self-described "global visual content creator and marketplace," is a public company under Section 12(b) of the Exchange Act, incorporated in Delaware with its principal place of business in Seattle, Washington, whose Class A common stock trades on the New York Stock Exchange (the "NYSE") under the ticker symbol GETY.

## FACTS

### I.     CCNB SPAC Goes Public and Issues Redeemable Warrants

22.     CCNB SPAC was a SPAC sponsored by CC Neuberger Principal Holdings II Sponsor LLC (the "Sponsor").  Like other SPACs, CCNB SPAC's purpose was to identify a private company acquisition target to bring into the public market through a so-called SPAC business combination.

23.     CCNB SPAC went public through an initial public offering ("IPO") on July 30, 2020, in which it raised $828 million from investors.  Investors in the IPO purchased "units" for $10.00 per unit, with each unit consisting of one CCNB SPAC Class A ordinary share (a "CCNB Ordinary Share"), and one-fourth of one redeemable warrant to purchase a CCNB Ordinary Share, with each whole redeemable warrant entitling its holder to purchase one CCNB Ordinary Share at a price of $11.50 per share (the "CCNB Warrant Shares").  In total, CCNB SPAC issued 20.7 million non-fractional public warrants (the "CCNB Warrants").

24.     Upon consummation of the IPO, CCNB SPAC's units were immediately separable into publicly tradable CCNB Warrants and CCNB Ordinary Shares, each approved for listing on the NYSE.

25.     CCNB's offer and sale of units (and the constituent CCNB Warrants and CCNB Ordinary Shares) was conducted pursuant a final prospectus relating to CCNB SPAC's registration statement on Form S-1, declared effective by the SEC on July 30, 2020.  In accordance with C&DI 139.01, the CCNB Warrant Shares were not required to be registered in the IPO because the CCNB Warrants could not be exercised for CCNB Warrant Shares within one year of issuance.

26.     On the cover page to its IPO prospectus, CCNB SPAC prominently informed investors that the CCNB Warrants "will become exercisable on the later of 30 days after the completion of our initial business combination and 12 months from the closing of this offering, and will expire five years after the completion of our initial business combination or earlier upon redemption or liquidation, as described in this prospectus."  IPO Prospectus, filed August 3, 2020, at cover page ¶ 2.

## II.     The Business Combination

27.     On December 10, 2021, CCNB SPAC publicly announced its entry into a business combination agreement, dated December 9, 2021 (the "Business Combination Agreement"), with Griffey Holdings, Inc. ("Griffey Holdings"), the pre-business combination holding company for Getty Images.

28.     Through a series of mergers undertaken to consummate the Business Combination and associated domestication of the post-combination business, CCNB SPAC and Griffey Holdings were merged into Vector Holding, LLC ("Vector Holding"), which then changed its name to Getty Images.

29.     The Business Combination closed and was consummated on July 22, 2022.

30.     In accordance with the terms of the Business Combination Agreement, and pursuant to the terms of the Warrant Assignment, Assumption, and Amendment Agreement dated July 22, 2022, Getty Images expressly assumed the rights and obligations of CCNB SPAC under the Warrant Agreement.  As such, the CCNB Warrants and the CCNB Warrant Shares were exchanged for the Warrants and the Warrant Shares, each issued by Getty Images Holdings, Inc.

31.     The Warrant Agreement states in pertinent part that, "in the case of any merger or consolidation . . . the holders of the Warrants shall thereafter have the right to purchase and receive, upon the basis and upon the terms and conditions specified in the Warrants . . . the kind and amount of shares of stock or other securities or property . . . that the holder of the Warrants would have received if such holder had exercised his, her, or its Warrant(s) immediately prior to such event . . . ."  Warrant Agreement § 4.4.  Further, "[a]ll the covenants and provisions of this Agreement by or for the benefit of the Company or the Warrant Agent shall bind and inure to the benefit of their respective successors and assigns." *Id.* § 9.1.

32.     Thus, upon consummation of the Business Combination and assumption by Getty Images of the Warrant Agreement, the holders received Warrants issued by Getty Images in exchange for their CCNB Warrants, which Warrants bore terms identical to the CCNB Warrants and were exercisable for Warrant Shares (Class A common stock of Getty Images).

33.     The IPO prospectus disclosed to investors that new Getty Warrants would become exercisable 30 days after the Business Combination, if the Business Combination closed more than one year after consummation of CCNB SPAC's IPO.

34.     Getty Images common stock (ticker symbol: GETY) and Warrants (ticker symbol: GETY WS) began publicly trading on the NYSE on July 25, 2022.

35.     The Business Combination agreements contained significant "earn-out" incentives for Getty Images insiders based on the stock's trading price.  If Getty Images common stock traded above $17.50 (for maximum benefit) for 20 out of 30 consecutive trading days, (i) the Sponsor's Class B shares would vest into 5.14 million shares of Class A common stock and (ii) insiders would unlock an immediate distribution of nearly 59 million earn-out shares, plus a future distribution of millions more.

### III.    Key Provisions of the Warrant Agreement Assumed by Getty Images in the Business Combination

36.     The Warrants were issued pursuant to the Warrant Agreement.

37.     The terms of the Warrant Agreement are expressly incorporated into each Warrant and are enforceable against the issuer by each Warrant holder.

38.     By their terms, each Warrant expired five years following the Business Combination (or earlier upon redemption or liquidation), Warrant Agreement § 3.2, and entitled holders to one Warrant Share upon exercise, *id.* § 3.1.

39.     The Warrant Agreement provided that the Warrants could be redeemed by Getty Images for $0.01 per Warrant pursuant to a timely redemption notice if the last reported sale of Getty Images' common stock had been at least $18.00 per share on each of 20 trading days within a 30-trading day period.  *Id.* § 6.1.  Also, for a redemption notice to be valid, there must be an effective registration statement covering the Warrant Shares and a current prospectus relating thereto available throughout the 30-day redemption period.  *Id*.

40.     As relevant to this dispute, exercise of the Warrants for cash (the only exercise method available at the unilateral election of Warrant holders) was conditioned on the following: *First*, 30 days must have passed since the closing of the Business Combination.  *Id.* § 3.2.  *Second*, the Warrant Shares must have been registered under the Securities Act on a registration statement declared effective by the SEC.  *Id.* § 3.3.2.  *Third*, a prospectus relating to the registration statement covering the Warrant Shares must be current.  *Id.*

41.     In the Warrant Agreement, Getty Images covenants to "use commercially reasonable efforts to cause the [registration] to become effective within sixty (60) Business Days after the closing of its Initial Business Combination and to maintain *a current prospectus relating thereto* until the redemption or expiration of the Warrants in accordance with the provisions of this [Warrant Agreement]."  *Id.* § 7.4.1 (*emphasis added*).  The Warrant Agreement's plain language contemplates that the Warrant Shares could be registered on a registration statement filed and declared effective in advance of the closing of the Business Combination, *e.g.*, on a Form S-4.  The Warrant Agreement obligated the issuer to "as soon as practicable, but in no event later than twenty (20) Business Days after the closing of its initial Business Combination, [use] commercially reasonable efforts to file with the Commission a registration statement for the registration, under the Securities Act, of the [Common] Shares issuable upon exercise of the Warrants."  *Id.*

**IV.     The Getty S-4 Registered the Warrants and the Warrant Shares**

42.     On January 18, 2022, Getty Images filed the Getty S-4 with the SEC, which was subsequently amended by Forms S-4/A filed with the SEC on March 15, 2022, April 22, 2022, June 13, 2022, June 27, 2022, and June 29, 2022.

43.     The Staff declared the Getty S-4 effective after the market close on June 30, 2022.

44.     The Getty S-4 registered the Warrants and the Warrant Shares.

45.     SEC regulations as well as the instructions for Form S-4 show that Form S-4 may be used to register *both* warrants and the common stock underlying those warrants for offer and sale on a delayed or continuous basis by the issuer.  Form S-4 may be used for offerings of securities to be issued "in a transaction of the type specified in paragraph (a) of Rule 145."  17 C.F.R. § 239.25.  Rule 145(a) covers an "offer, offer to sell, offer for sale, or sale" of securities related to a "merger or consolidation."  17 C.F.R. § 230.145(a)(2).  Securities Act Rule 415, in turn, states that "securities which are to be issued in connection with business combination transactions," may be offered "on a continuous or delayed basis," which can occur after the closing of the business combination.  17 C.F.R. § 230.415(a)(1)(viii).  The instructions for Form S-4 expressly incorporate these rules.  *See* Rule as to Use of Form S-4, General Instructions A and H (applying Rule 145 and Rule 415 to permit use of Form S-4 to register securities issued in connection with business combination transactions on a delayed or continuous basis).

46.     In fact, the SEC's published interpretations of its rules make clear that the Warrant Shares were *required to be* registered on Getty S-4.  The SEC's longstanding position is that an issuer is deemed to be offering, and thus must register, the securities underlying a convertible security (*e.g.*, the shares underlying warrants) if the convertible security can be exercised for cash (*i.e.*, sold) within 12 months.  *See* SEC Division of Corporation Finance's C&DI 139.01 (stating

that if a security is convertible or exercisable into the underlying security within one year of an offering, then the offering of both the warrant and the underlying security is deemed to be taking place and "the underlying securities *must be registered* at the time the offer and sale of the convertible securities are registered") (emphasis added).

47.     This requirement can be seen, for example, in the SPAC business combination transaction for Li-Cycle Holdings Corp. ("Li-Cycle") (NYSE: LICY) in which Li-Cycle sought to register shares of common stock issuable upon exercise of warrants on its Form F-4 (the foreign-filer equivalent of Form S-4).   As required by C&DI 139.01, the SEC instructed Li-Cycle to remove risk factor disclosure that claimed the common stock underlying Li-Cycle's warrants was *not* being registered on Form F-4 and that warrant holders would be subject to risk that an effective registration statement registering the warrant shares "may not be in place when an investor desires to exercise warrants."   *See* SEC Comment Letter to Li-Cycle Holdings Corp. Re: Registration Statement on Form F-4, dated April 27, 2021, at 3[3], referencing the erroneous risk factor disclosure included in Li-Cycle's Registration Statement on Form F-4 filed with the SEC on March 30, 2021, at 57.   Li-Cycle removed the risk factor in advance of its Form F-4 being declared effective.

48.     Indeed, John Huber, one of the principal architects of Securities Act Rule 415 and Form S-4, has offered expert testimony in another federal proceeding in which he confirms that Form S-4 "can be used to register the offer and sale of the warrants, the resale of the warrants, the exercise of the warrants for cash and the resulting issuance of the common stock upon exercise of the warrants, as well as the resale of such common stock."   Expert Report of John J. Huber, ECF 34-1, ¶ 12.A, *Tang Capital Partners, LP v. BRC Inc.*, 1:22-cv-03476-RWL (S.D.N.Y. Aug. 30, 2022).

---

[3] *available at* https://www.sec.gov/Archives/edgar/data/1828811/000000000021005287/filename1.pdf.

49.     Furthermore, the fee table to the Getty S-4, filed as Exhibit 107 thereto, makes clear that the filing registered both the Warrants and the Warrant Shares.  That fee table itemized the securities being registered and the fees being paid for their registration.  It showed that Getty Images paid nearly $42,000 to register the "common stock underlying warrants":

**Table 1: Newly Registered Securities**

| | Security Type | Security Class Title[1] | Fee Calculation or Carry Forward Rule | Amount Registered[8] | Proposed Maximum Offering Price Per Unit | Maximum Aggregate Offering Price | Fee Rate | Amount of Registration Fee |
|---|---|---|---|---|---|---|---|---|
| | | | | **Newly Registered Securities** | | | | |
| Fees to Be Paid | Equity | New CCNB Class A Common Stock, par value $0.0001 per share[2] | — | 150,475,093 | $ 9.885 [9] | $ 1,487,446,294.31 | 0.0000927 | $ 137,886.27 [12] |
| | Equity | New CCNB Class A Common Stock, par value $0.0001 per share[3] | — | 4,724,703 | $ 9.910 [10] | $ 46,821,806.73 | 0.0000927 | $ 4,340.38 [12] |
| | Equity | New CCNB Series B-1 Common Stock, par value $0.0001 per share[4] | 457(i) | 2,570,000 | — | — | — | — [13] |
| | Equity | New CCNB Series B-2 Common Stock, par value $0.0001 per share[5] | 457(i) | 2,570,000 | — | — | — | [13] |
| | Equity | New CCNB Warrants to purchase common stock[6] | 457(g) | 39,260,000 | — | — | — | — [14] |
| | Equity | New CCNB Class A Common stock underlying warrants[7] | — | 39,260,000 | $ 11.50 [11] | $ 451,490,000 | 0.0000927 | $ 41,853.12 [12] |
| | | Total Offering Amounts | | | | $ 1,938,936,294.31 | | $ 184,080 |
| | | Total Fees Previously Paid | | | | | | $ 184,080 |
| | | Total Fee Offsets | | | | | | $ 184,080 |
| | | Net Fee Due | | | | | | $ 0.00 |

…

(7)   Represents 39,260,000 shares of New CCNB Class A Common Stock, issuable upon exercise by holders of New CCNB Warrants following the completion of the Business Combination.

Getty S-4/A, filed June 29, 2022, at Ex. 107 (highlighting added).  (Unless otherwise noted, all highlighting of screenshots in this Complaint has been added.)

50.     The prospectus to the Getty S-4 covers the offer and sale of the Warrants and the Warrants Shares.

51.     In a legal opinion dated June 27, 2022 and filed by Getty Images as Exhibit 5.1 to the Getty S-4 (the "Exhibit 5 Opinion"), Getty Images' counsel opined on the legality of the Warrant Shares to be registered on the Getty S-4 for offer and sale on a delayed and continuous basis.  The Exhibit 5 Opinion states that "[t]his opinion is being rendered in connection with the

14

registration under the above-referenced Registration Statement of . . . (iv) 39,260,000 [warrants] and (v) 39,260,000 Warrant Shares."  Exhibit 5 Opinion, at 2.

52.    The Exhibit 5 Opinion states, without qualification, that upon the closing of the Business Combination and the signing of the related agreements, (i) the Warrants would be valid and binding according to their terms, and (ii) the Warrants would be exercisable by the holders in exchange for payment of the Warrant price, whereupon "the Warrant Shares will be duly authorized, validly issued, fully paid and non-assessable."  Specifically, and in relevant part, the Exhibit 5 Opinion states:

6.    Upon (i) the consummation of the Business Combination, (ii) the filing of the Post-Closing Certificate of Incorporation with the Delaware Secretary of State and (iii) the execution of the Warrant Assignment Agreement, each New CCNB Warrant will be a valid and binding obligation of New CCNB, enforceable against New CCNB in accordance with its terms under the laws of the State of New York.

7.    Upon (i) the consummation of the Business Combination, (ii) the filing of the Post-Closing Certificate of Incorporation with the Delaware Secretary of State, (iii) the execution of the Warrant Assignment Agreement and (iv) the exercise by the holders of warrants and the payment of the exercise price for the warrant shares pursuant to the Warrant Agreement, the Warrant Shares will be duly authorized, validly issued, fully paid and non-assessable.

Exhibit 5 Opinion, at 5.

53.    The SEC Staff reviewed and commented on multiple drafts of the Exhibit 5 Opinion but did not question or object in any way to the representation made in the Exhibit 5 Opinion as to the legality of the Warrant Shares being registered on the Getty S-4 for delayed or continuous offering.  *See* Kirkland & Ellis LLP Response Letters dated June 13, 2022 and June 27, 2022 to SEC Comment Letters dated May 18, 2022 and June 24, 2022, respectively, available at https://www.sec.gov/Archives/edgar/data/1898496/000110465922070309/filename1.htm and https://www.sec.gov/Archives/edgar/data/1898496/000110465922074564/filename1.htm, respectively.

54.    Despite containing more than 50 pages of risk factors, the Getty S-4 did *not* include in the prospectus or in any exhibit to the Getty S-4 any disclosure that the Warrant Shares were

not being registered on the Getty S-4 or that holders of the Warrant Shares may not be able to exercise the Warrant Shares when they desire.  The Getty S-4 did *not* disclose that the Warrant Shares would only be exercisable if covered on an additional registration statement that would become effective, if at all, at an unknown time in the future.

55.     While the Getty S-4 did include boilerplate references to generic risks arising from the issuer's redemption right, neither the prospectus nor any exhibit to the Getty S-4 contained a warning that Getty Images may seek to redeem the Warrants for a penny apiece without the Warrants having ever become exercisable by Warrant holders for value.

56.     In fact, the Getty S-4, when reasonably interpreted, led an average investor to conclude that Getty Images' redemption right would arise only after the Warrant holder had an opportunity to exercise the Warrants at a profit.  Getty Images expressly stated in the Getty S-4 that "[t]he redemption criteria for the [Warrants] . . . have been established to prevent a redemption call unless there is *at the time of the call* a significant premium to the [Warrant] exercise price." Getty S-4/A, filed June 29, 2022, at 315 (emphasis added).

57.     In short, as reflected in its IPO prospectus, Getty S-4, and the accompanying Exhibit 5 Opinion, Getty Images understood and represented to the holders of CCNB units and separated CCNB Ordinary Shares who voted on the Business Combination, as well as to the investing public generally, that once the Getty S-4 was declared effective by the SEC, the Warrant Shares would be registered and the Warrants would become exercisable 30 days following the closing of the Business Combination.

58.     Because the Getty S-4 was declared effective on June 30, 2022, the Warrants and Warrant Shares were registered.  Although Getty Images intentionally registered the Warrant Shares in compliance with C&DI 139.01, the fact is that the registration would have been

enforceable even if Getty Images had registered the Warrant Shares in error.  This is because once a registration is declared effective by the SEC, it is final.  "[A]ny subsequent questions about form eligibility are moot by operation of law" and "the securities on that form are deemed to be on the proper form and are registered."  Expert Report of John J. Huber, ECF 34-1, ¶¶ 28–29 (citing Securities Act Rule 401(g)), *Tang Capital Partners, LP v. BRC Inc.*, 1:22-cv-03476-RWL (S.D.N.Y. Aug. 30, 2022).

59.     In the Getty S-4, Getty Images provided undertakings to keep the prospectus current during any period in which offers or sales were being made and to remove from registration by means of a post-effective amendment any security registered through the Getty S-4 that remained unsold at the termination of the offering.  Getty S-4/A, filed June 29, 2022, Part II-Item 22 Undertakings, at II-3 to II-4.

## V.     The Warrants and the Warrant Shares Are Registered under the Exchange Act on Form 8-A, and the Warrants and Warrant Shares Are Listed for Trading on the New York Stock Exchange

60.     The registration of the Warrants and Warrant Shares on the Getty S-4 is further evidenced by the listing of these securities for trading on the NYSE.

61.     On July 22, 2022, Getty Images filed a Form 8-A registration statement under the Exchange Act that registered for listing on the NYSE the Warrants and Warrant Shares (*i.e.*, Class A common stock underlying the Warrants), pursuant to Section 12(b) of the Exchange Act.

62.     Listing a class of securities on a national exchange such as the NYSE is predicated upon a prior registration under the Securities Act.  Thus, Form 8-A requires the filer to state the Securities Act registration statement to which the Form 8-A relates.  Getty Images identified the Getty S-4 (Registration No. 333-262203) on its Form 8-A registration statement.

63.     That same day, relying upon Getty Images Form 8-A registration statement, the NYSE issued its Certification Letter, certifying its approval for listing of the Warrants and the

Warrant Shares.  The letter describes the Warrants being listed as "*exercisable* for one share of Class A Common Stock at an exercise price of $11.50 per share."  (emphasis added).

64.     Thus, the NYSE's listing of the Warrants and Warrant Shares for trading on July 22, 2022, confirms that the Warrants and Warrant Shares were registered on the Getty S-4.

## VI.     The Getty S-1 Confirms that the Warrants and Warrant Shares Were Registered on the Getty S-4

65.     On August 9, 2022, Getty Images initially filed the Getty S-1 with the SEC.  That filing expressly affirmed that the Warrants and Warrant Shares had been registered on the Getty S-4.

66.     The Getty S-1 identified the Warrants and Warrant Shares but did not pay a fee for their registration.

67.     In the Getty S-1, Getty Images stated that no registration fee was required for the Warrant Shares because *that common stock had already been registered on the Getty S-4 and was not being registered on the Getty S-1.*  As a result, *Getty Images represented that it was merely transferring those previously-registered shares from the Getty S-4 to the Getty S-1* upon the Getty S-1 being declared effective, pursuant to Rule 429 under Regulation C of the Securities Act:

EX-107

**Calculation of Filing Fee Tables**

**Form S-1**
(Form Type)

**Getty Images Holdings, Inc.**
(Exact Name of Registrant as Specified in its Charter)

. . .

**Table 3: Combined Prospectuses**

| Security Type | Security Class Title | Amount of Securities Previously Registered | Maximum Aggregate Offering Price | Form Type | File Number | Initial Effective Date |
|---|---|---|---|---|---|---|
| Equity | Class A Common Stock underlying Warrants(4) | 39,260,000(5) | $         451,490,000 | S-4 | 333-262203 | June 30, 2022 |

. . .

18

(4)   No registration fee is payable in connection with the 39,260,000 shares of Class A Common Stock previously registered on a registration statement on Form S-4 (File No. 333-262203), which was declared effective on June 30, 2022 (the "Prior Registration Statement") because such shares are being transferred from the Prior Registration pursuant to Rule 429(b) under the Securities Act. A registration fee is only payable in connection with the 400,795,769 shares of Class A Common Stock that were not previously registered under the Prior Registration Statement, with a proposed maximum aggregate offering price of $10,244,339,856. See "Statement Pursuant to Rule 429" in this registration statement.

Getty S-1/A, filed September 2, 2022, at Ex. 107 at 267-68.

68.     Getty Images represented that the Getty S-1 would constitute a post-effective amendment to the Getty S-4, meaning that until the Getty S-1 became effective, *the Getty S-4 was the operative registration statement* for the Warrant Shares:

(5)   39,260,000 shares of Class A Common Stock registered under the Prior Registration Statement are included this registration statement. Pursuant to Rule 429(b) under the Securities Act, this registration statement upon effectiveness, will constitute post-effective amendments to the Prior Registration Statement, which post-effective amendments shall hereafter become effective concurrently with the effectiveness of this registration statement and in accordance with Section 8(c) of the Securities Act. If securities previously registered under the Prior Registration Statement are offered and sold before the effective date of this registration statement, the amount of previously registered securities so sold will not be included in the prospectus hereunder.

*Id.* at 272.

69.     Further, the Getty S-1 acknowledged that the Getty S-4 rendered the Warrants exercisable, stating that any Warrant Shares offered and sold prior to effectiveness of the Getty S-1 would not be covered by the prospectus to the Getty S-1, and therefore would not be transferred to the Getty S-1:

(5)   39,260,000 shares of Class A Common Stock registered under the Prior Registration Statement are included this registration statement. Pursuant to Rule 429(b) under the Securities Act, this registration statement upon effectiveness, will constitute post-effective amendments to the Prior Registration Statement, which post-effective amendments shall hereafter become effective concurrently with the effectiveness of this registration statement and in accordance with Section 8(c) of the Securities Act. If securities previously registered under the Prior Registration Statement are offered and sold before the effective date of this registration statement, the amount of previously registered securities so sold will not be included in the prospectus hereunder.

*Id.*

70.     These statements in the Getty S-1 demonstrate that Warrants *could* be exercised into Warrant Shares before the Getty S-1 would become effective.  Thus, when it filed the Getty S-1 on August 9, 2022, Getty Images affirmed the effective registration of the Warrant Shares on the Getty S-4.

71.     The CRCM Funds—and indeed the investing public, including all other market participants—had the right to rely on Getty Images' disclosures in its filings as true, accurate, and complete and to position themselves in the market based upon that reasonable reliance.

## VII.   The CRCM Funds Prepare to Exercise the Warrants with the Intention of Quickly Selling the Warrant Shares

72.     CRCM Master Fund and CRCM SPAC Fund acquired their Warrants between December 10, 2021 and August 23, 2022.

73.     As of August 22, 2022, CRCM Master Fund held 2,600,000 Warrants.  As of August 22, 2022, CRCM SPAC Fund held 365,141 Warrants.  On August 23, 2022, CRCM Master Fund purchased an additional 45,623 Warrants, for a total of 2,645,623.  The approximately 3,000,000 Warrants held by the CRCM Funds, collectively, represented roughly 15% of the 20.7 million Warrants issued and outstanding as of the Business Combination.

74.     By early-August 2022, it became clear that the Warrants could be quite profitable as Getty Images' stock price pushed higher, creating a substantial spread between the stock price and the exercise price of the Warrants.  Per their trading plan, the CRCM Funds intended to exercise their Warrants and sell the Warrant Shares as soon as permitted.

75.     On August 12, 2022, a CRCM Funds representative contacted Getty Images to confirm that the Warrants would become exercisable on August 22, 2022.

76.     On August 13, 2022, Getty Images replied that the Warrants would not become exercisable until the Getty S-1, which had been filed on August 9, 2022, was declared effective by the SEC.

77.     Believing that position to be incorrect, the CRCM Funds replied to Getty Images on August 15 and 16, 2022, asserting that the Warrants should be exercisable beginning on August 22, 2022, and requesting a meeting to discuss the matter.

78.     Getty Images replied on August 17, 2022, and again stated that the Warrants could not be exercised until the Getty S-1 became effective.

79.     Simultaneously with their outreach to Getty Images, the CRCM Funds also asked their broker, Morgan Stanley, for assistance confirming the CRCM Funds' understanding, based upon Getty Images' public filings, that the Warrants would become exercisable on August 22, 2022.

80.     Reflective of their intent to exercise their Warrants and sell the Warrant Shares quickly, the CRCM Funds inquired with Morgan Stanley whether the CRCM Funds could borrow shares from Morgan Stanley's stock loan desk so as to sell the shares into the market while the Warrant exercise transaction was still being processed.

81.     On August 15, 2022, the CRCM Funds again spoke to their broker about their plan to exercise the Warrants.  Noting the "huge disconnect" between the then-present stock price and the Warrant strike price, the CRCM Funds emphasized that information on the exercise process was "very critical for our trading plan in the coming days."

82.     The broker contacted the warrant agent, Continental Stock Transfer & Trust Company ("Continental Stock"), for clarification and reported to the CRCM Funds on August 16, 2022 that it had received the following instruction from the agent: "WARRANTS ARE NOT CURRENTLY EXERCISABLE. UPDATE WILL BE POSTED WHEN THEY CAN BE EXERCISED."

83.     Under the Warrant Agreement, Getty Images agreed that the warrant agent (Continental Stock) would serve as its agent.  *See* Warrant Agreement at 1 (agreeing that warrant agent will act on behalf of the company "in connection with the issuance, registration, transfer, exchange, redemption, and exercise of the Warrants"); *id.*, ¶ 1 (appointing warrant agent as agent

for the company); *id.*, ¶ 8.4.2 (stating that company indemnifies warrant agent for all claims not arising from the warrant agent's own gross negligence or willful misconduct or bad faith).

**VIII.   Getty Images Blocks the CRCM Funds' Efforts to Exercise Their Warrants**

84.     On August 22, 2022, the day when the CRCM Funds understood the Warrants to become exercisable, the CRCM Funds again asked Morgan Stanley to confirm with the Warrant agent that the Warrants could now be exercised.

85.     The CRCM Funds told Morgan Stanley that a refusal by Getty Images to permit the exercise of the Warrants starting August 22, 2022 would contradict Getty Images' previous public filings.

86.     By contacting the Warrant agent and Getty Images, the CRCM Funds evidenced their intent to implement their trading plan to exercise the Warrants and then sell the Warrant Shares to capture their unrealized profits.

87.     The broker contacted both the Warrant agent and Getty Images and responded that "according to the agent the S-1 has not been approved yet, so the warrants can't be exercised."

88.     Because Getty Images and its warrant agent refused to permit the CRCM Funds to exercise their Warrants, there was nothing the CRCM Funds could do to effectuate the exercise their Warrants.  To exercise, the CRCM Funds were required to submit a notice of exercise, which would be delivered to Getty Images via an online portal maintained by the Depository Trust Company ("DTC").  However, the notice could only be delivered in response to a "corporate action event" posted to the portal by Getty Images.  As of August 22, 2022, Getty Images had not created any such corporate action on the portal, which precluded the CRCM Funds from submitting a notice of exercise.

89.     Realizing that Getty Images' refusal to permit the exercise of the Warrants would severely compromise their trading plan, the CRCM Funds began selling their Warrants.

90.     On August 31, 2022, two Getty Images insiders filed public disclosures stating that they had exercised on a cashless basis all 18,560,000 of their private placement warrants at a ratio of 0.6 shares per warrant.  SEC Forms 4, filed August 31, 2022 by Neuberger Berman Group LLC and Chu Chinh.

91.     Eager to exercise however they could, and having seen insiders exercise their own warrants on a cashless basis, the CRCM Funds asked Getty Images whether they could exercise their Warrants on a cashless basis as the private warrant holders had done.

92.     On September 2, 2022, a representative of the CRCM Funds contacted Getty Images to demand that the CRCM Funds be permitted to exercise their Warrants on a cashless basis, as the insiders had done.

93.     Getty Images responded on September 3, 2022, stating that it was "continuing to evaluate its options under the terms of the warrant agreement."

94.     On September 3, 2022, a representative of the CRCM Funds again contacted Getty Images, noting disclosures to the SEC of insider exercise and stressing an interest by the CRCM Funds in exercising their Warrants.  The CRCM Funds stated that since the terms of the insiders' private warrants were substantially similar to those of the (public) Warrants, Warrant holders should be permitted to exercise their Warrants on the same terms as the Getty Images insiders were able to exercise their warrants.  The CRCM Funds noted that they would suffer "irreparable harm" if they were not permitted to exercise on the same terms as the Getty Images insiders.

95.     Getty Images responded six days later, on September 9, 2022, saying yet again that the company was "continuing to evaluate its options under the terms of the warrant agreement."

96.     The CRCM Funds realized that Getty Images' continued refusals to permit the exercise of the Warrants, on either a cash or cashless basis, rendered the CRCM Funds' trading

plan impossible and required the CRCM Funds to unwind their position as a result.  To mitigate

their damages, the CRCM Funds sold the remainder of their Warrants.

IX.    **Getty Images' Refusal to Permit Exercise of the Warrants Cost the CRCM Funds
       Tens of Millions of Dollars**

97.    The chart below depicts the share price of GETY during the relevant period:



(A larger version of this chart is attached hereto as <u>Appendix A</u>.)

98.    After a relatively quiet first few days following the Business Combination, the stock

jumped above $17.50 on July 29, 2022 and remained there through August 19th—the last trading

day before the Warrants were supposed to become exercisable on August 22nd.

99.    As of August 13th, GETY had been trading above $17.50 for 11 days—more than

half of the 20 consecutive trading days required to unlock over 65 million shares' worth of

incentive distributions.  With the stock trading around $30, those incentive distributions were

valued at approximately $2 billion.  To realize that payout, however, the stock price had to

remain above $17.50 for nine more trading days—*i.e.*, until at least August 25th.  An event such as

the exercise of the Warrants on August 22nd would risk destabilizing the stock price.  That was a

risk Getty Images insiders, including the Sponsor, were unwilling to take.

100.    With each passing day, Getty Images' motivation to protect the stock price became all the more powerful.  By August 19th—the last trading day before the Warrants were to become exercisable on August 22nd—GETY had been trading above $17.50 for *16* days, bringing the Sponsor and Getty Images insiders tantalizingly close to their billion-dollar payday.

101.    When the Warrants became exercisable on August 22, 2022, GETY traded at an intraday high of nearly $30 per share. GETY traded at a $28.72 volume-weighted average price on that day, which was $17.22 greater than the Warrants' exercise price of $11.50.

102.    Had they been permitted to exercise their Warrants promptly, the CRCM Funds could have acquired approximately 3,000,000 Warrant Shares, which they then could have sold into the trading market on the NYSE at a large profit.

103.    Instead, after Getty Images repeatedly blocked CRCM Funds from exercising their Warrants, the CRCM Funds could not execute their trading plan.  As a consequence, the CRCM Funds liquidated their position, which resulted in the CRCM Funds taking a loss on their original cost basis and being unable to profit from the position.

104.    Meanwhile, GETY remained above $17.50 for long enough to enable the Sponsor and Getty Images insiders to realize incredible rewards.  By August 25th, they had tripped the share price triggers for their earn-out, and thus reaped over 60 million Class A shares.

105.    Then, on August 29, 2022, the Sponsor and its affiliate (by then Getty Images insiders), exercised all of their private placement warrants on a cashless basis, and obtained for themselves more than five million additional shares through a particularly favorable conversion ratio due to the then stock price. SEC Schedule 13D by Neuberger Berman Group LLC, filed 9/20/2022.

**X.      Getty Images Redeems the Warrants for a Penny Each**

106.    After Getty Images insiders and the Sponsor reaped their reward, the stock price precipitously declined.

107.    The Getty S-1 became effective after the market close on September 15, 2022.

108.    The next day, September 16, 2022—the first day that Getty Images permitted Warrant holders to exercise their Warrants—GETY opened below the exercise price of the Warrants.  It has not recovered since.

109.    That same day, Getty Images insiders sold over 1 million shares.  SEC Form 4 by Neuberger Berman Group LLC, filed September 20, 2022.

110.    Even worse, the same trading prices that unlocked the share earn-out for the Sponsor and other Getty Images insiders also triggered Getty Images' right under the Warrant Agreement to redeem all Warrants for *a penny* ($0.01) each.  Warrant Agreement ¶ 6.1.  This is because the Warrant Agreement permitted Getty Images to redeem Warrants for $0.01 each at any time after the Warrants became exercisable if Getty Images traded above $18 for 20 out of 30 consecutive trading days.  *Id*.

111.    Thus, on September 19, 2022, just two trading days after Warrant holders were finally permitted to exercise their Warrants, Getty Images notified those Warrant holders that it was redeeming all outstanding Warrants for $0.01 each.

112.    The strike price for the Warrants was $11.50.  Between September 19, 2022 and October 18, 2022, which was the post-notice period during which Warrant holders could exercise their Warrants prior to redemption, Getty stock *never* traded at or above the Warrants' strike price.

113.    Thus, the redemption permanently erased the Warrants' value and reclaimed for Getty Images all unissued shares that would otherwise have materially diluted the ownership stake of Getty Images' insiders.

114.    Customarily, SPAC warrants expire 5 years from the date of the consummation of the SPAC business combination, allowing sufficient time for warrant holders to realize value on their warrants, which is important in the often-turbulent wake of any SPAC business combination. In turn, the post-combination company, as heir to the warrants originally issued by the SPAC, customarily has an option to redeem all outstanding warrants for a nominal value ($0.01) if its stock trades above a set price for 20 out of 30 trading days.  This redemption feature is designed to force warrant holders to exercise their "in-the-money" warrants and thereby realize the intrinsic value of the warrants.  The aim of this customary redemption feature in SPAC warrants is to provide the post-combination issuer with an opportunity to eliminate onerous warrant overhang while providing warrant holders with the opportunity to obtain significant upside value in their warrants.

115.    Here, Getty Images manipulated the exercise period of the Warrants so as to enable it to eliminate warrant overhang *without* enabling Warrant holders to obtain the upside value in their Warrants.  Getty Images caused an enormous transfer of value to company insiders at the sole expense of Warrant holders.  This was in direct conflict with the disclosed purpose of the redemption feature.  In the Getty S-4, Getty Images stated that "[t]he redemption criteria for the [Warrants] . . . have been established to prevent a redemption call unless there is *at the time of the call* a significant premium to the [Warrant] exercise price."  Getty S-4/A, filed June 29, 2022, at 315 (emphasis added).

116.    The Warrants ceased trading on October 19, 2022, and were delisted from the NYSE effective October 31, 2022.  Getty Images Form 25-NSE, filed Oct. 19, 2022.  Thus, Getty Images succeeded in its plan to transfer wealth away from the Warrant holders, who made their investments in good faith, and into the hands of company insiders.

117.    Getty Images' breach of the Warrant holders' rights enabled the company to manipulate its Warrant holders into a position in which the company could redeem the Warrants and seize the value owed to Warrant holders without those Warrant holders ever having had the opportunity to exercise their Warrants profitably.

118.    In sum, by blocking the exercise of Warrants until the Getty S-1 became effective, Getty Images simultaneously:

    a.      Triggered massive incentive distributions for the Sponsor and other Getty Images insiders worth nearly $2 billion at their peak, thereby diluting Getty Images' common stock;

    b.      Facilitated the cashless exercise of private placement warrants by Getty Images insiders at highly favorable ratios, further diluting Getty Images' common stock; and

    c.      Rendered its issued and outstanding Warrants virtually worthless by assuring that they could not be exercised until it had become unprofitable to do so and then redeeming them for a penny apiece.

## CAUSES OF ACTION

### Count I
**Breach of Contract**

119.    The CRCM Funds repeat each of the foregoing allegations as if fully set forth herein.

120.    The Warrant Agreement is an enforceable contract that Getty Images expressly assumed.

121.    Whether as registered holders or beneficial holders, the CRCM Funds are the only parties with an interest in bringing an action for Getty Images' breaches of the Warrant Agreement

with respect to the CRCM Funds' Warrants because only the CRCM Funds sustained damages arising from Getty Images' refusal to permit the exercise of those Warrants.

122.   The CRCM Funds performed all material conditions, covenants, and promises required of them by the Warrant Agreement.

123.   The CRCM Funds determined that their Warrants were exercisable on August 22, 2022, in reasonable reliance on the disclosures in the Getty S-4 by which Getty Images registered the Warrant Shares.

124.   Before the Warrants became exercisable, Getty Images breached the Warrant Agreement by falsely stating that the Warrants would become exercisable only upon the effectiveness of the Getty S-1 to be filed following the Business Combination.

125.   Getty Images further breached the Warrant Agreement when, on August 22, 2022, it, directly and through its agent, Continental Stock, rebuffed the CRCM Funds' efforts to exercise their Warrants by continuing to assert that the Warrants were not yet registered and by failing to initiate a corporate action on the DTC portal.

126.   Getty Images' failures and refusals to permit the exercise of the CRCM Funds' Warrants constituted material breaches of the Warrant Agreement, as Getty Images had a duty to permit the Warrants to be exercised on August 22, 2022.

127.   As a direct and proximate result of Getty Images' breaches, the CRCM Funds were deprived of the opportunity to exercise their Warrants when it was profitable to do so, mitigated their damages by selling their Warrants at a loss, and as a result suffered substantial damages in an amount to be proven at trial.

## Count II
### Breach of the Implied Covenant of Good Faith and Fair Dealing

128.    The CRCM Funds repeat each of the foregoing allegations as if fully set forth herein.

129.    The Warrant Agreement is an enforceable contract that Getty Images expressly assumed.

130.    Whether as registered holders or beneficial holders, the CRCM Funds are the only parties with an interest in bringing an action for Getty Images' breaches of the Warrant Agreement with respect to the CRCM Funds' Warrants because only the CRCM Funds sustained damages arising from Getty Images' refusal to permit the exercise of those Warrants.

131.    Getty Images has breached the implied covenant in the Warrant Agreement of good faith and fair dealing by taking deliberate steps designed to impede and prevent, and which did impede and prevent, the CRCM Funds' exercise of their Warrants.  These steps include:

    a.    Falsely asserting, directly and through its agent, Continental Stock, that the Warrant shares required registration on the Getty S-1 and that the Warrants therefore could not be exercised on August 22, 2022; and

    b.    Rejecting the CRCM Funds' exercise inquiries on August 22, 2022 on the basis of this same false assertion; and

    c.    Engineering or exploiting a registration schedule for the Warrants that operated to deliver a windfall to Getty Images insiders, including the Sponsor, while depriving Warrant holders of the value of their Warrants.

132.    Getty Images' breaches of its duty of good faith and fair dealing have substantially impaired the CRCM Funds' ability to maximize the value of their Warrants by preventing the

CRCM Funds from selling their Warrants when it was profitable to do so and causing the CRCM Funds to mitigate their damages by selling their Warrants at a loss.

133.    As a direct result of Getty Images' breaches of the implied covenant of good faith and fair dealing, the CRCM Funds have suffered substantial damages in an amount to be determined at trial.

**Count III**
**Breach of Contract (In the Alternative)**

134.    The CRCM Funds repeat each of the foregoing allegations as if fully set forth herein.

135.    This claim is being asserted in the alternative event that the Getty S-4 did not register the Warrant Shares.

136.    The Warrant Agreement is an enforceable contract that Getty Images expressly assumed.

137.    Whether as registered holders or beneficial holders, the CRCM Funds are the only parties with an interest in bringing an action for Getty Images' breaches of the Warrant Agreement with respect to the CRCM Funds' Warrants because only the CRCM Funds sustained damages arising from Getty Images' refusal to permit the exercise of those Warrants.

138.    The Warrant Agreement, required Getty Images to "as soon as practicable, but in no event later than twenty (20) Business Days after the closing of its initial Business Combination, [to] use commercially reasonable efforts to file with the Commission a registration statement for the registration, under the Securities Act, of the [Common Stock] issuable upon exercise of the Warrants."  Warrant Agreement § 7.4.1.

139.    Getty Images could have registered the Warrant Shares under the Getty S-4, which was submitted in anticipation of the Business Combination and declared effective as of June 30, 2022.

140.    Such registration was practicable and achievable with commercially reasonable efforts.  Use of the Getty S-4 to register the Warrant Shares to be offered and sold on a delayed or continuous basis is consistent with the intended use of Form S-4.

141.    In fact, since the Warrants were exercisable within one year, C&DI 139.01 required Getty Images to register the Warrant Shares together with the Warrants on the Getty S-4.

142.    Getty Images' failure to register the Warrant Shares on the Getty S-4 breached its obligation to use commercially reasonable efforts to cause the Warrant Shares to be registered "as soon as practicable."

143.    Getty Images' failure to register the Warrant Shares on the Getty S-4 deprived the CRCM Funds of the opportunity to exercise their Warrants starting on August 22, 2022, when it would have been profitable to do so, until September 16, 2022, when it was no longer profitable to do so.

144.    As a direct and proximate result of Getty Images' breach, the CRCM Funds have suffered substantial damages in an amount to be determined at trial.

**<u>Count IV</u>**
**Breach of Contract (In the Alternative)**

145.    The CRCM Funds repeat each of the foregoing allegations as if fully set forth herein.

146.    This claim is being asserted in the alternative event that Getty Images failed to keep the prospectus in the Getty S-4 current.

147.     In *Alta Partners, LLC v. Getty Images Holdings, Inc.*, Case No. 1:22-cv-08916 (S.D.N.Y.), Getty Images filed a Memorandum of Law in Support of Motion to Dismiss, dated January 10, 2023 (the "Getty MTD") (Dkt. 16), in which it asserted that it had neglected to file a current prospectus in connection with the Getty S-4.  *See* Getty MTD at 15 ("The absence of a current prospectus for the Exercise Shares, as required by Section 3.3.2 of the Warrant Agreement, likewise rendered Plaintiff's purported warrant exercise invalid.")

148.     Indeed, conceding its injurious conduct, Getty insists that "by the time Plaintiff [Alta Partners, LLC] sought to exercise the warrants after the Business Combination closed, the prospectus (filed more than two months earlier) was no longer *current*."  *Id.* (emphasis original)

149.     The Warrant Agreement is an enforceable contract that Getty Images expressly assumed.

150.     Whether as registered holders or beneficial holders, the CRCM Funds are the only parties with an interest in bringing an action for Getty Images' breaches of the Warrant Agreement with respect to the CRCM Funds' Warrants because only the CRCM Funds sustained damages arising from Getty Images' refusal to permit the exercise of those Warrants.

151.     Getty Images undertook the obligation to "use commercially reasonable efforts . . . to maintain a current prospectus relating thereto until the redemption or expiration of the Warrants in accordance with the provisions of this Agreement."  Warrant Agreement § 7.4.1.

152.     Getty Images could have kept the prospectus contained in the Getty S-4 current with the exercise of commercially reasonable efforts.

153.     Their failure to keep the Getty S-4 prospectus current thus breached the terms of the Warrant Agreement.

154.    That breach damaged the CRCM Funds to the extent that it prevented the CRCM Funds from being able to exercise their Warrants starting August 22, 2022, when it would have been profitable to do so, until September 16, 2022, when it was no longer profitable to do so.

155.    As a direct and proximate result of that breach, the CRCM Funds have suffered substantial damages in an amount to be determined at trial.

**Count V**
**Securities Act of 1933 §§ 5(b)(2) and 12(a)(2) (15 U.S.C. §§ 77e(b)(2) and 77*l*(a)(2))**
**(In the Alternative)**

156.    The CRCM Funds repeat each of the foregoing allegations as if fully set forth herein.

157.    This claim is being asserted in the alternative event that the Warrants were not exercisable until the effectiveness of the Getty S-1 on the grounds that Getty Images failed to keep the prospectus relating to the Getty S-4 current until the Getty S-1 was declared effective.

158.    Getty Images registered the Warrants and the Warrant Shares on the Getty S-4. That registration became effective June 30, 2022.  The Getty S-1 subsequently became effective on September 15, 2022.

159.    Thus, from August 22, 2022 (when the Warrants first became exercisable) until September 15, 2022, Getty Images was conducting, via the mails and interstate commerce, a delayed and then continuous offering of the Warrant Shares by means of the prospectus contained in the Getty S-4.

160.    For the duration of this delayed and continuous offering, Getty Images was required by law to maintain a current prospectus to the Getty S-4.  Securities Act of 1933 §§ 5(b)(2) (imposing criminal liability) and 12(a)(2) (imposing civil liability for breaches of § 5).

161.    Consistent with those obligations, Getty Images provided an undertaking in the Getty S-4 that it would keep the prospectus current.

162.     Nevertheless, Getty Images negligently failed to keep the prospectus relating to the Getty S-4 current by failing to update that prospectus to reflect new material information, including, but not limited to, the closing of the Business Combination on July 22, 2022 and the filing of Getty Images 10-Q on August 12, 2022.

163.     These events, individually and collectively, were material because they presented information that a reasonably prudent investor would want to consider when buying or selling the securities registered on the Getty S-4.

164.     In publicly-filed court papers, Getty Images admits that it neglected to keep the Getty S-4 prospectus current.  *See* Getty MTD at 15 ("The absence of a current prospectus for the Exercise Shares, as required by Section 3.3.2 of the Warrant Agreement, likewise rendered Plaintiff's purported warrant exercise invalid.")

165.     Indeed, conceding its injurious conduct, Getty insists that "by the time Plaintiff [Alta Partners, LLC] sought to exercise the warrants after the Business Combination closed, the prospectus (filed more than two months earlier) was no longer *current*."  *Id.* (emphasis in original)

166.     Getty Images was required to exercise reasonable care to update its prospectus expeditiously.  Instead, Getty Image made no attempt to update its prospectus until it filed a purported "post-effective amendment" in the form of the Getty S-1 upon its effectiveness.  The Getty S-1 was first filed on August 9, 2022, and did not become effective until September 15, 2022.

167.     Getty Images directed the securities offering it registered through the Getty S-4 to the investing public.  The securities laws, including disclosure obligations, are intended to protect these investors, including the CRCM Funds.

168.     Getty Images is liable to the CRCM Funds for damages in an amount to be determined at trial for its failure to update its prospectus with any material disclosures following the declaration of effectiveness of the Getty S-4 by the SEC.

**Count VI**
**Securities Exchange Act of 1934 Section 10(b) (15 U.S.C. § 78j) and 17 C.F.R. § 240.10b-5**
**(In the Alternative)**

169.     Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

170.     This claim is being asserted in the alternative event that the Getty S-4 did not register the Warrant Shares.

171.     In connection with the purchase and sale of Warrants, Getty Images defrauded the CRCM Funds in violation of Exchange Act § 10(b) and 17 C.F.R. § 240.10b-5 ("Rule 10b-5").

172.     The Getty S-4, including the prospectus and exhibits, did not contain a risk factor or other disclosure stating that the Getty S-4 did not register the Warrant Shares.

173.     Moreover, the Getty S-4 also affirmatively misrepresented that the Warrant Shares were being registered by, *inter alia*:

a.     listing the Warrant Shares on the fee table to the Getty S-4 and stating that Getty Images was paying a fee to register the Warrant Shares; and

b.     attaching the Exhibit 5 Opinion, which opined, without qualification, that after the Business Combination "the Warrant Shares will be duly authorized, validly issued, fully paid and non-assessable" when the Warrants are exercised and the strike price paid by Warrant holders.

174.     The fact that the Getty S-4 did not register the Warrant Shares was material, and the failure to make this disclosure rendered the Getty S-4 misleading to potential buyers of the Warrants, including the CRCM Funds.

175.    Getty Images knew that this fact was material, as it was one of the three facts (together with the date of the consummation of the Business Combination and the availability of a current prospectus) that would determine when 20.7 million Warrants would become exercisable and when the Warrant Shares could in turn be offered and sold by Getty Images to a Warrant holder upon exercise of its Warrants.

176.    The CRCM Funds (and other purchasers of Warrants) reasonably relied on Getty Images' material misrepresentations and omission when they interpreted the Getty S-4 as having registered the Warrant Shares for delayed or continuous offering.  This is because, *inter alia:* (i) the Getty S-4 indicated that the Warrant Shares were being registered, (ii) a registration statement on Form S-4 may be used to register shares of common stock underlying warrants, and (iii) C&DI 139.01 of the SEC's Division of Corporation Finance required Getty Images to register the Warrant Shares together with the Warrants on the Getty S-4.

177.    Getty Images' material misrepresentations and omission from the Getty S-4 caused the CRCM Funds to buy Warrants with a materially false understanding of when those Warrants would become exercisable for registered Warrant Shares.

178.    Getty Images knew its material misrepresentations and omission from the Getty S-4 would cause investors, including CRCM Funds, to purchase Warrants with a materially false understanding of when those Warrants would become exercisable for Warrant Shares.

179.    The CRCM Funds justifiably relied on Getty Images' misrepresentations and omission in the Getty S-4.

180.    Getty Images had both the motive and opportunity to commit this fraud and there is strong circumstantial evidence of conscious misbehavior or recklessness.

181.    Getty Images' misrepresentations and omission, rendering the Getty S-4 intentionally false and misleading, damaged the CRCM Funds by preventing the CRCM Funds from realizing a profit on their Warrants and by instead causing the CRCM Funds to sell their Warrants at a loss.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor and against Defendant as follows:

A.    Awarding general and compensatory damages to the CRCM Funds in an amount to be proven at trial;

B.    Awarding the CRCM Funds costs and disbursements, including attorney's fees, and punitive damages related to this dispute; and

C.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to the Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury on all issues that are so triable.

[*signatures on following page*]

Dated:  February 8, 2023                    **RAKOWER LAW PLLC**
        New York, New York

                                            BY:   _/s/ Michael C. Rakower_____
                                                  Michael C. Rakower
                                                  Travis Mock
                                                  260 Madison Ave., 15th Fl.
                                                  New York, NY 10016
                                                  (212) 660-5550
                                                  mrakower@rakowerlaw.com
                                                  tmock@rakowerlaw.com

                                            *- and –*

                                                  Brian D. Hail
                                                  **CROWELL & MORING LLP**
                                                  590 Madison Ave., 20th Fl.
                                                  New York, NY 10022-2544
                                                  (212) 223-4000
                                                  bhail@crowell.com

                                                  *Attorneys for Plaintiffs CRCM*
                                                  *Institutional Master Fund (BVI) Ltd. and*
                                                  *CRCM SPAC Opportunity Fund LP*

**Appendix A**

